### 9824

### ANDREWS v. HAMPTON.

#### (94 S. E. 112.)

1. AUCTIONS AND AUCTIONEERS—CONTRACT RIGHT TO SELL PROPERTY.— An auctioneer of land had the right to advertise and sell lots at any time between the dates set by the contract between him and the owner, and the owner would have been bound to make deeds to the purchasers.

2. AUCTIONS AND AUCTIONEERS—CONTRACT TO SELL LOTS—BREACH BY OWNER.—If the owner of lots contracted with an auctioneer to sell them between certain dates, and then put the auctioneer off as to the whole sale by pleading illness until the time limit for sales had expired, doing so with the intent to break up the sale, the owner breached the contract as effectually as if he had done so summarily and unequivocally.

3. AUCTIONS AND AUCTIONEERS—BREACH OF CONTRACT BY LOT OWNER— QUESTION FOR JURY.—In an action by an auctioneer against the owner of lots for breach of contract to permit their sale at auction, question of the owner's breach by putting the auctioneer off until the time limit for sales had expired, with intent to break up the sale, *held* for the jury.

Before WILSON, J., Spartanburg, ——, 1917. Affirmed.

Action by E. M. Andrews, trading as the Southern Realty and Auction Company, against Gray B. Hampton. From a judgment for plaintiff, defendant appeals.

*Messrs. Carson & Boyd,* for appellant, cite: *Effect of charge:* 16 S. C. 14; 68 S. C. 523-527.

*Mr. L. W. Perrin,* for respondent.

November 6, 1917.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action for breach of contract; verdict for $250 for the plaintiff; appeal by the defendant. A history of this transaction is this: The plaintiff sells lands at public auction. The defendant had town lots on Converse Heights, Spartanburg, and the instant controversy arises out of an alleged contract between the plaintiff and defendant for a sale of those lots. The sale was not had, and the contention of the plaintiff is that the defendant prevented it "by the arbitrary and unreasonable actions of the defendant in postponing the sales, and the final refusal of the defendant to allow him to put on the sales" (seventh paragraph, complaint). The answer was a general denial.

There are several exceptions, but the appellant has embodied them in three postulates, to wit: (1) A disregard of the instructions of the Court, a reversible error; (2) the verdict of the jury was contrary to the evidence and instructions of the Court; (3) no breach of the contract on the part of the defendant. ·

It is true the jury must take the law from the Court; and, upon a failure to do so, the Court ought to set the verdict aside. So much is plain. The two instructions made by the Court, and which the jury is said to have ignored, are these:

"Fifth. The breach of a contract means the breaking of a contract, and in order to break a contract a person must be guilty of the act either of omission or commission. That is, he must omit to do something which he had agreed to do which will prevent the carrying out of a contract by the

other party to the contract, or he must commit some positive act which will prevent the performance by the other party."

"Seventh. I charge you that, under the contract introduced in evidence, the plaintiff had the right to advertise and sell the property at any time between the 15th day of August and the 1st day of September, 1913, under the terms stipulated in the contract, and the owners of the property would be bound to make purchasers at such sale a deed."

They were proposed by the defendant.

The seventh request had reference to "the contract introduced in evidence." That is a written instrument; and by its plain terms the plaintiff may have sold the property any time betwixt August 15th and September 1st, and the defendant would have been bound to make deeds to the purchasers. So the request was plainly right. But in contracts as in surgery, sometimes there is a "green break." And the suggestion of the plaintiff is that the defendant parleyed with the plaintiff, and led him away from the letter of the agreement, and finally in effect prevented its performance. The law wisely does not declare what acts shall amount to a breach; a breach rests sometimes in direct words, sometimes in indirect words, sometimes in circumstances, and sometimes in all three; it is always *dehors* the contract. The inquiry in every case is, Did one of the parties after agreement then disagree? For generally a party may disagree after he has agreed; but in that event he must pay the hurt to the other party.

We have considered the correspondence betwixt the parties with some care, and we have also considered the parol testimony. The contract is plain; it was made April 26, 1913, and provides for a sale "between August 15 and September 1, 1913." Two days after its making the defendant wrote the plaintiff that he had been told by one Alexander, who had sold 15 lots in Spartanburg on April 27th, that his sales "fell flat." The defendant further said in that letter

that both Alexander and defendant's lawyer "thought it was a bad time just now." On May 23, 1913, the plaintiff wrote to the defendant that the plaintiff's agent had written to the plaintiff that the defendant might like to have the sale about June 2d, which was Converse College's commencement week. The plaintiff added further that he could sell June 2d or June 13th or 16th. The defendant did not answer that letter. On the 31st July, 1913, the defendant wrote to the plaintiff as follows:

"Landrum, S. C., 7-31, 1913.

"Mr. E. M. Andrews, Greensboro, N. C. Sir: Your Mr. Thompson was here and said you spoke of putting on our Converse Heights lots Aug. 15th. I am not strong enough to look after the business now and have been expecting to go to a hospital since May 15th. My physician says I will be compelled to have an operation, and the month of August is the only time I have, and will be there nearly all the month. I have noticed the sales in Spartanburg and nothing looks good to me. I think if crops are good, later in the season will be a better time, say some time in the fall. Will let you know when I am able to look after business. Yours truly, Hampton Bros."

That letter was a request by the defendant for a modification of the contract, from a sale at the furthest on August 31st to "some time in fall," coupled with a promise by the defendant to let the plaintiff know when the defendant was "able to look after business." And the testimony of the plaintiff's witnesses tended to show that the plaintiff acted on this letter. When the plaintiff was asked on the witness stand why he did not pursue the letter of the contract and sell on August 30th, he answered this:

"Q. Mr. Andrews, Mr. Carson was asking you yesterday in regard to what prevented you from putting on this sale that you had advertised. Tell the jury exactly why it was you didn't put this sale on, of your own knowledge, and why it was you could not; explain that. A. Because Mr. Hamp-

ton was always reporting that he was going to the hospital; he was unwell. It didn't suit him to put the sale on at that time. He wanted it postponed until a later date; and I did not want to imperil his health. That was the impression that he made on me, that he was a sick man—I had never met him—that he was going to the hospital, and he wanted it delayed until he could be out, well, and attend to it."

Mr. Hampton testified, it is true, that he was ready to abide the letter of the contract; and had the plaintiff sold on August 30th he would have executed deeds to the purchasers; he did not say that he would have confirmed a sale made after August 30th; he did say that Ford (one of the plaintiff's agents) wanted him to extend the time of the sale, and that Ford got mad because the defendant would not agree to it; though further on he did say that he did not refuse to grant an extension. The real intent of the defendant under the circumstances was for the jury of the vicinage.

If the defendant put the plaintiff off until the time limit for sales had expired, with the intent to break up the sale, that was as effectual a breach of the contract as if the breach had been summary and unequivocal.

We give no opinion about the weight of the testimony to sustain the plaintiff's contention; the issue was for the trial Court. We are of the opinion, however, that the testimony is susceptible of two reasonable inferences, and, that being so, the case was rightly sent to a jury and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES HYDRICK and FRASER concur in the opinion of the Court.

MR. JUSTICE WATTS, *dissenting.* I cannot concur in the opinion of Justice Gage. It was the duty of plaintiff to sell in the time provided for by the parties in the agreement. A failure to do so destroyed all of plaintiff's claim. The mere inspection of the contract by plaintiff would have

informed him of his right. I do not think a written contract to extend the time for the sale of real estate can be made out by parol evidence so as to take the case out of the statute of frauds. I do not think plaintiff has any cause of action, and judgment should be reversed.